UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GARRARD M. MYERS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-4870** |
| **HERCULES OFFSHORE SERVICES, LLC** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Hercules Offshore's Motion for Summary Judgment (Doc. #20) is **GRANTED** as to plaintiff's wrongful termination claim, and that claim is **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to plaintiff's Jones Act negligence and unseaworthiness claims.

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Hercules Offshore Services, LLC. Hercules argues that it is entitled to summary judgment dismissing plaintiff's Jones Act negligence and unseaworthiness claims because plaintiff cannot prove that the shower in which he was injured was unreasonably dangerous. Further, Hercules argues that it is entitled to summary judgment regarding plaintiff's wrongful termination claim because it is undisputed that plaintiff was terminated after Hercules sold the vessel on which plaintiff was employed.

On May 5, 2013, plaintiff, Garrard M. Myers, a roustabout and Jones Act seaman onboard Herclues' vessel, the HERCULES 49, fell and injured his ankle while showering. The shower in which Myers was injured was stainless steel, and did not have handrails, a mat, or other slip resistant material. Myers remained aboard the vessel until the May 8, 2013, shift change. Once on shore, Myers sought treatment at the Alabama Orthopedic Clinic in Mobile, Alabama, and he underwent

surgery on May 13, 2013, to repair the ankle fracture and torn ligaments. Thereafter Myers participated in physical therapy until August 15, 2013, when his physician determined that he reached maximum medical improvement and released him to full duty.

Myers filed this suit on June 21, 2013, alleging that Hercules' negligence and the unseaworthiness of the HERCULES 49 caused his accident and injury. Specifically, Myers alleged that the shower was unreasonably dangerous because it did not have handrails, a mat or slip resistant material. Myers claims that Hercules was negligent and the vessel was unseaworthy because of the failure to provide those safety features. On October 17, 2013, Myers amended his complaint to add claims of wrongful termination and failure to pay short-term disability benefits.[1] Myers alleges that he was terminated because he filed a personal injury suit against Hercules.

## ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations,

---

[1] Myers' short-term disability claim is stayed pending the outcome of the administrative process (Doc. #49).

unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     Jones Act Negligence and Unseaworthiness**

Hercules argues that it is entitled to summary judgment on Myers' Jones Act negligence and unseaworthiness claims because there is no proof that the shower was unreasonably dangerous due to the lack of handrails, mats or other slip resistant material. Hercules contends that this is the only reported accident to occur in the stainless steel showers aboard the HERCULES 49 that have been used over 20,000 times since they were installed in 2007. Hercules asserts that the lack of other accidents proves that it was not negligent, nor the vessel unseaworthy, due to the lack of handrails, mats or other slip resistant material.

Jones Act negligence and unseaworthiness claims are separate causes of action and are treated as such. See Brunner v. Maritime Overseas Corp., 779 F.2d 296, 298 (5th Cir. 1986). In this case, the basis of both the negligence and unseaworthiness claims by Myers against Hercules is that the stainless steel showers were unreasonably dangerous because they did not have handrails, mats or other slip resistant material.

Under the Jones Act, 46 U.S.C. § 30101, et. seq, a seaman's employer is liable for damages if the employer's negligence, including negligence of the employer's officers, agents, or employees, caused the seaman's injury. See Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc); see also Hopson v. Texaco, Inc., 86 S.Ct. 765, 766 (1966). The employer is held

to a standard of ordinary prudence under the circumstances. Id. "A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury." Id. The terms "slightest" and "featherweight" have been used to describe the reduced standard of causation between the employer's negligence and the employee's injury. Id. at 335; Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988).

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence." Usner v. Luckenback Overseas Corp., 91 S.Ct. 514, 517 (1971). The duty to provide a seaworthy vessel is absolute and completely independent of the duty under the Jones Act to exercise reasonable care; therefore, a showing of negligence is not required. See Phillips v. W. Co. of N. Am., 953 F.2d 923, 928 (5th Cir. 1992). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be 'accident free.'" Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1432-33 (5th Cir. 1988). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purpose for which it is to be used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir. 2001).

The question presented in this motion is whether Hercules was negligent, or the shower unseaworthy because it lacked handrails, a mat or other slip resistant material. See Gardner v. Panama Canal Co., 115 F.Supp. 687 (D.C.Z. 1954) (citing Krey v. United States, 123 F.2d 1008, 1010 (2d Cir. 1941)). In Krey, 123 F.2d at 1009, a seaman was injured when he fell stepping into a metal shower that had a concrete floor and a wooden mat. The vessel was in port at the time of the accident. Id. The court found that the shower was unseaworthy:

> Viewed as a shower to be used at sea, the absence of any sort of
> handle or rail for support is alone almost enough to condemn it. In

4

> the presence of running water, made slippery by soap, it is difficult enough for a user to stand up when a shower remains steady; at sea, it is clearly more difficult. But there were other things wrong with the shower. Its slope was especially dangerous for one stepping into it; and the direction of the boards removed any protection which might be provided if, say, the boards ran crosswise or were crisscrossed. Furthermore, the use of the shower for washing clothes added to the hazard of stepping on the boards by increasing their slipperiness. All of these factors combined seem to us clearly to establish an unseaworthy condition. That the accident occurred in port is hardly controlling. Even there some roll may be present; and even absent any roll, this shower was not well suited for use by any except the extremely cautio[u]s. A seaman may reasonably assume that a shower on board ship is constructed for use at sea, and thus act accordingly, there is no reason to require him to be more cautious solely because the ship is in port.

Id. at 1010.

Similarly, in Welch v. J. Ray McDermott & Co., Inc., 336 F.Supp. 383, 384-85 (W.D. La. 1972), the plaintiff seaman was injured when he slipped stepping out of a metal shower onto a tile floor during heavy seas. There were no handrails for support in exiting the shower, or mats or towels provided to "to form a slip resistant area upon which a bather could place his feet as he stepped out of the stall." Id. at 384. The court found that the shower was unseaworthy:

> Viewed as a shower to be used at sea, the lack of any handle or bar for support when stepping out does itself present an unsafe condition. The presence of water made slippery by soap would make it difficult enough for a bather to safely step out of the stall with the shower steady; at sea, with water on the floor outside of the stall, it is clearly more difficult. In addition, there is no reason why a mat made of some type of non-slip material should not have been available for the use of a bather stepping over the sill and upon the tile floor. These factors combined to establish an unseaworthy condition which proximately caused the injuries received by the plaintiff.

Id. at 385.

These cases demonstrate that a vessel shower that does not have handrails, a mat or other slip resistant material may be unseaworthy or the employer negligent for not providing such items. As Hercules points out, these cases are distinguishable because the ships involved were ocean-going vessels and the courts found that the showers had other issues, whereas the HERCULES 49 was a barge operated solely on inland waters, was stationary at the time of Myers' accident, and no other problems with the showers have been established at this stage of the litigation. Although the HERCULES 49 did not go to sea, it was a vessel that moved under tow and was subject to the ebb and flow of the waters upon which it navigated. Even slight rocking might make it more difficult to step into or out of a shower that does not have handrails, a mat or other slip resistant material. As pointed out in Krey, it is irrelevant for a determination of the seaworthiness of the shower that the HERCULES 49 was stationary at the time of Myers' accident. See Krey, 115 F.Supp. at 1010 ("That the accident occurred in port is hardly controlling"). Because other courts have found vessel showers that do not have handrails, mats or other slip resistant material unseaworthy, this court cannot find at this juncture that the shower on the HERCLUES 49 was reasonably fit for its intended purpose, or that the employer was not negligent for not providing such items. Therefore, Hercules' motion for summary judgment is DENIED as to Myers' Jones Act negligence and unseaworthiness claims.

**C.     Unlawful Termination**

Hercules contends that it is entitled to summary judgment regarding Myers' wrongful termination claim because the evidence demonstrates that Myers was terminated because Hercules sold its entire inland barge fleet to Baywater Drilling on June 15, 2013.

Unless a seaman has signed an employment contract for a particular voyage or specified term, his employment is "terminable at will by either party." Smith v. Atlas Off-Shore Boat Serv., Inc., 653 F.2d 1057, 1060 (5th Cir. 1981) (citation omitted). Thus, "[t]he maritime employer may discharge the seaman for good cause, for no cause, or even, in most circumstances for a morally reprehensible cause." Id. at 1063 (footnote omitted). However, it is a maritime tort for a maritime employer to discharge a seaman in retaliation for his exercising his legal right to file a personal injury action against the employer. Id. "In order to prevail on the retaliatory discharge claim, the seaman must affirmatively establish that the employer's decision was motivated in substantial part by the knowledge that the seaman either intends to file, or has already filed, a personal injury action against the employer." Id. at 1063-64 (footnotes and citation omitted). The maritime employer may "defeat the seaman's action by demonstrating that the personal injury action was not a substantial motivating factor for the discharge." Id. at 1064.

It is undisputed that Hercules sold the HERCULES 49 to Baywater while Myers was out on medical leave due to the complained of injury. Myers admitted that Baywater contacted him via electronic mail message regarding potential employment on one of the vessels it purchased from Hercules. There is no evidence that Myers was terminated for any reason other than the sale of the vessel. Because of this evidence, Myers cannot establish that Hercules' decision to terminate him was motivated in substantial part by Myers' personal injury lawsuit, and Hercules has shown that Myers' lawsuit was not a substantial motivating factor for the discharge because Myers was terminated due to the sale of the vessels. Therefore, Hercules' motion for summary judgment regarding Myers' wrongful termination claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that Hercules Offshore's Motion for Summary Judgment (Doc. #20) is **GRANTED** as to plaintiff's wrongful termination claim, and that claim is **DISMISSED WITH PREJUDICE.** The motion is **DENIED** as to plaintiff's Jones Act negligence and unseaworthiness claims.

New Orleans, Louisiana, this   15th   day of May, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**