## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GARRARD M. MYERS** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-4870** |
| **HERCULES OFFSHORE SERVICES, LLC** | **SECTION: "S" (2)** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Gerrard M. Myers, filed this suit against defendant, Hercules Offshore Services, LLC, alleging that he was injured on May 5, 2013, while exiting a stainless steel shower aboard Hercules' vessel, the HERCULES 49.  He claims that the shower was unreasonably dangerous, and his injury was caused by Hercules' negligence and the vessel's unseaworthiness because Hercules failed to provide shower mats or handrails in the shower.

### DISCUSSION

#### I.    Background

On May 5, 2013, Myers, a roustabout and Jones Act seaman onboard Hercules' vessel, the jack-up drilling rig HERCULES 49, fell and injured his ankle while exiting the shower in the shower room adjacent to his bunkroom.  The shower in which Myers was injured was stainless steel, and did not have handrails, a mat, or other slip resistant material.  Myers was wearing flip-flops as shower shoes.  Myers testified that when he was exiting the shower, he stepped out with his right foot, and before it hit the ground, he slipped with his left foot, which was still in the shower.  He tried to grab the shower rod, it fell, and so did he.  Myers testified that his right foot did not get caught on the shower's ledge, and that his flip flop did not break.

Mark Vernado, another Hercules employee, was in the shower room when Myers had his accident.  Vernado did not see Myers fall.  As Vernado was headed out of the shower room, he heard

a loud noise, and heard Myers say something, so he walked back into the room and saw Myers on the floor.  Vernado testified at his deposition that Myers told him that he slipped and twisted his ankle.  Vernado also testified that Myers' flip flops were not broken.  Vernado left to tell the steward about Myers' accident.  Thereafter, other management employees, including the toolpusher, Lewis Calvin Hillman, and the Offshore Installations Manager, Randy O'Brein, were informed of the accident. Vernado returned to the shower room with another man to help Myers to his room, where O'Brein, Hillman, and the first responder, Adam Lusk, talked to Myers.

O'Brein testified that when he asked Myers what happened, Myers told him that his shoe broke and he slipped.  O'Brien asked if Myers wanted to go ashore to see a doctor, and Myers refused.  O'Brein testified that he had Myers fill out a handwritten accident report, which O'Brein later typed, without changing anything.  The report stated under "Events of the Incident": "When getting out of shower, my shower shoe on left foot broke causing my left foot to slip and twist and resulting in falling out of shower."  O'Brein testified that he does not know what happened to the handwritten form after the HERCULES 49 was sold to Baywater Drilling.

Hillman testified that the accident reports are handwritten at first by the person involved in the accident, if possible, typed later by either him or O'Brein, and then signed.  Hillman stated that nothing would be changed from the handwritten to the typed version regarding the events of the incident.

Myers testified that Hillman brought the typed report to him the next morning for his signature, but he did not read it, and was not shown the first page which contains the "Events of the Incident" section.  Myers denies that he ever said that his flip flops broke.

2

Myers remained aboard the vessel until the May 8, 2013, shift change.  Once on shore, Myers sought treatment at the Alabama Orthopedic Clinic in Mobile, Alabama, and he underwent surgery on May 13, 2013, to repair the ankle fracture and torn ligaments.  Thereafter, Myers participated in physical therapy until August 15, 2013.  Myers has since undergone two more surgeries and more physical therapy.

## ANALYSIS

Jones Act negligence and unseaworthiness claims are separate causes of action and are treated as such.  See Brunner v. Maritime Overseas Corp., 779 F.2d 296, 298 (5th Cir. 1986).  In this case, the basis of both the negligence and unseaworthiness claims by Myers against Hercules is that the stainless steel showers aboard the HERCULES 49 were unreasonably dangerous because there were no shower mats, other slip resistant material, or handrails in those showers.

Under the Jones Act, 46 U.S.C. § 30101, et. seq, a seaman's employer is liable for damages if the employer's negligence, including negligence of the employer's officers, agents, or employees, caused the seaman's injury.  See Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc); see also Hopson v. Texaco, Inc., 86 S.Ct. 765, 766 (1966).  The employer is held to a standard of ordinary prudence under the circumstances. Id.  "An employer 'has a continuing duty to provide a reasonably safe place to work and to use ordinary care to maintain the vessel in a reasonably safe condition.'" Lett v. Omega Protein, Inc., 487 Fed. Appx. 839, 843 (5th Cir. 2012) (quoting 1 Admiralty & Maritime Law § 6-22 (5th ed.)).  "Because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the amount of caution required, in the use of ordinary care, will vary with the nature of what is being done . . . '" Id. (quoting 1B-III Benedict on Admiralty § 21).  The terms

"slightest" and "featherweight" have been used to describe the reduced standard of causation between the employer's negligence and the employee's injury, and a seaman must only show that "his employer's negligence is the cause, in whole or in part, of his injury." Gautreaux, 107 F.3d at 335; Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988).

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence." Usner v. Luckenback Overseas Corp., 91 S.Ct. 514, 517 (1971).  To establish a claim for unseaworthiness under the general maritime law, a seaman must prove "that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purpose for which it is used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir. 2001).  A vessel can be unseaworthy if her "gear [is] defective," "appurtenances [are] in disrepair," or "crew [is] unfit." Usner, 91 S.Ct. at 517.  The duty to provide a seaworthy vessel is absolute and completely independent of the duty under the Jones Act to exercise reasonable care; therefore, a showing of negligence is not required. See Phillips v. W. Co. of N. Am., 953 F.2d 923, 928 (5th Cir. 1992). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be 'accident free.'" Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1432-33 (5th Cir. 1988).  To prevail on an unseaworthiness claim, the seaman "must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probably consequence of the unseaworthiness." Johnson, 845 F.2d at 1354 (citations omitted).

After considering the evidence and testimony presented, the court finds that Myers failed to establish either that Hercules' alleged negligence or the alleged unseaworthiness of the HERCULES 49 caused his accident and injury.  Instead, the weight of the evidence leads to the conclusion that

4

Myers slipped and fell when his flip flop either broke, which is not attributable either to Hercules' alleged negligence or the alleged unseaworthiness of the vessel. Both O'Brein and Hillman testified that Myers told them and wrote in the accident report that his shoe broke as he was exiting the shower. The "Events of the Incident" portion of the accident report was written in the first person, and both O'Brein and Hillman testified that nothing in this section would have been changed from the handwritten to the typed version of the report. Although Myers testified that he did not say that his flip flop broke, O'Brien and Hillman were adamant that there is no reason that the report would have indicated a broken flip flop if that information had not been supplied by Myers.

Further, the testimony at trial established that the HERCULES 49 was stationary and secured to the water bottom at the time of Myer's accident. The testimony also established that the vessel did not have any noticeable sway in this position and that the showers were never used when the vessel was under tow. The courts in Krey v. United States, 123 F.2d 1008 (2d Cir. 1941), and Welch v. J. Ray McDermott & Co., Inc., 336 F.Supp. 383 (E.D. La. 1972), found that ocean-going vessels were unseaworthy for failing to have handrails or mats. However, the case at bar is distinguishable becuase the showers aboard the HERCULES 49 were only used when the vessel was in a stationary position, and secured to the water bottom. There are no regulations or other requirements that such a vessel have handrails in the shower. Thus, the HERCULES 49 was not unseaworthy for lacking handrails or mats in the shower.

## CONCLUSION

The court concludes that Myers' fall was the result of his flip flop breaking as he exited the shower. Myers has failed to prove that Hercules' negligence or the unseaworthiness of the HERCULES 49 caused his injury. Thus, the case is dismissed with prejudice.

5

New Orleans, Louisiana, this ___16th___ day of October, 2014.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**